## DANOVE v. AMERICAN SAFE DEPOSIT CO., Inc.
### No. 14543.

Court of Appeal of Louisiana. Orleans.
Nov. 27, 1933.

Harry R. Cabral, of New Orleans, for appellant.

Legier, McEnerny & Waguespack, of New Orleans, for appellee.

JANVIER, Judge.

Paul O. Danove claims of American Safe Deposit Company, Inc., $6,287, alleging that he received injuries when the door of an elevator car, in a building owned and operated by the said company, closed prematurely, catching him between the edge of the door and the side of the car. He avers that the operator started the elevator before he had completely entered it and that the door was permitted to close upon him and to crush him against the frame.

He also asserts that while he was caught in the said door, partly in and partly out, the said elevator, because of a defect in its mechanism and because of negligence on the part of the operator, moved up and down two or three times about a foot or a foot and a half, scraping him against the wall of the elevator shaft.

Defendant company denies that there was any defect in the elevator or that there was any negligence in its operation. It maintains that when the car was descending and had reached the seventh floor it stopped on signal to take on passengers; that when it had come to a complete stop two persons entered it; and that the operator seeing no one else on the floor started to close the door, but that when the door was partially closed plaintiff suddenly attempted to enter the car and was struck by the door.

Defendant avers further that the cause of the accident was the negligence of plaintiff himself in attempting to enter when the door was closing and, it maintains, that if there was any defect in the equipment of its elevator or any negligence on the part of its employee that, nevertheless, the proximate cause of the accident was the negligence on plaintiff's part.

Defendant further denies that plaintiff was injured and contends that, even if it appears that the accident, such as it was, was caused by fault on defendant's part, there can be no recovery since there was no damage.

In the district court there was judgment dismissing the suit, the judge, a quo, being of the opinion that plaintiff had received no substantial injuries. In the reasons for judgment we find the following:

"It is considered proved that, as the plaintiff was entering an elevator car, in the build-

ing of the defendant, the tender negligently closed the doors on him, and that the plaintiff was not negligent. But it is proved also that the tender realized the situation at once, and stopped the movement of the doors before the plaintiff received any substantial injury. Although the plaintiff called on Dr. Longo the third day after the incident the latter found no evidence of injury whatever. Certainly, if the facts were as the plaintiff and his wife describe them, that is, that while the plaintiff was held tight between the advancing edges of the doors and their jambs, the car moved up and down several times, the resulting injuries would have left unmistakable marks.

"It is considered that the plaintiff's case is without merit, and there should be judgment for the defendant, rejecting the plaintiff's demands."

The elevator was equipped with a door connected to the car itself so that when it was closed it moved up and down with the car. In addition to this, on each floor of the building there was a door which remained on the floor of the building and when closed prevented persons in the building from entering the elevator shaft.

The door in which plaintiff was caught was that one which was a part of the elevator car itself and which moved up and down with the said car.

The physician who treated plaintiff was Dr. Dominick V. Longo. He testified that he was unable to find any external evidence of injury. Although he first made the statement that plaintiff "had a contusion of the right wrist and radius," he later said that the contusions to which he referred were "not possible of vision," and, throughout his entire testimony, there appear statements that show plainly that his conclusion that there were injuries was based entirely on what was told him by plaintiff himself. For instance, when asked whether there was any external evidence of injury to plaintiff's chest and shoulder, he said, "No, sir, except what he told me." The following question and answer are also significant:

"Q. Now, the only reason you say he had pain is from what he told you? A. Yes, sir."

The trial judge wished to make certain whether or not there were any objective symptoms of internal injury, and the following testimony shows that the doctor was unwilling to state that he found any objective signs or symptoms:

"Q. From all the evidence available to you at that time, what he told you and what you observed, were his injuries severe or minor? A. Well, according to what he stated, why, they were quite severe, quite serious. However, we have no way of determining that. We have to take the patient's word for it.

There are certain conditions we are able to check up on the patient, however, and see that they perhaps might not be telling the truth. However, he seemed to be in pain and really stuck to it, and there was no way I could determine that he was not actually— that he did not actually have something to really complain about.

"Q. Shall I understand that your whole diagnosis and treatment was based upon what he told you? A. No. The extent of his pain was based on what he told me, how much pain he experienced upon an examination.

"Q. Were there any external marks of injury? A. No, sir.

"Q. Were there any what you call objective signs of injury? A. No, sir."

It is apparent that plaintiff had exhibited to his attorney his left hand on which, at the time of the trial, there were evidently scars, and had told the attorney that those scars had resulted from the elevator accident because the attorney had plaintiff show his left hand to Dr. Longo while he was on the witness stand and then questioned the doctor about those scars:

"Q. Doctor, you said there was no external evidence of injury at all? A. No, sir.

"Q. I am showing you, Doctor, the left hand of Mr. Danove, and I ask you if you will notice the scars on here, and if you can recall whether those scars—whether there was an injury to that side of his hand to produce an abrasion?

"By the Court: Q. Have you examined the hand and arm sufficiently? A. Yes, sir. Well, there was no visible injury of the skin as evidenced by this scar here, this scar that he presents now. In other words, that was not there, as far as I am concerned or as far as I am aware of. There was nothing there that would leave this scar. That is what I am really trying to make clear."

We consider this incident as corroborative of the charge made by defendant that plaintiff was willfully magnifying such slight injuries as he may have received, because we notice that when plaintiff himself took the stand later he made no reference to the scars on his hand. Apparently it was his purpose to claim that those scars had resulted from the accident had Dr. Longo's memory not served him well and had he, through a faulty memory, testified that the scars were on the hand at the time he treated plaintiff.

As further proof of this inclination on the part of plaintiff, we notice the fact that at the time of the trial, which was more than two years after the accident, plaintiff claimed to be still disabled. We also note that Dr. Menendez, a physician who had examined him some time before the trial, stated that he found nothing the matter with him.

When we consider the evidence of the two doctors and then read the manifestly exaggerated statement of the injuries as made by plaintiff, we can reach no other conclusion than that the district judge was correct when he found that the plaintiff had received no injury.

Whether the plaintiff was injured or not is solely a question of fact, and we find in the record nothing to justify a reversal of the findings made below on that question.

Since there was no damage, there can be no recovery, and it becomes unnecessary for us to consider the charges of negligence made against the defendant.

The judgment appealed from is affirmed, at the cost of appellant.

Affirmed.